IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RAYMOND CLAUDIO,

      Plaintiff,

v.                                      CASE NO. 5:13-cv-354-MP-GRJ

MICHAEL D. CREWS, et al,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion for Partial Dismissal, Doc. 33.

Plaintiff has responded to the motion, Doc. 40, and, therefore, the motion is ripe for

review.  After careful consideration of the motion and the response, the Court

concludes that the motion to dismiss is due to be **GRANTED in part and DENIED in**

**part**, and Plaintiff should be permitted to amend his complaint to include only those

claims permitted to proceed.[1]

## I.  PLAINTIFF'S ALLEGATIONS

The Court will summarize Plaintiff's factual allegations in his complaint. Although

this summary is long, it is necessary to evaluate which of Plaintiff's claims are subject to

dismissal.

Plaintiff alleges that on February 23, 2010, he suffered a C-2 fracture, otherwise

known as a Hangman's break.  This information was placed into his medical file on

---

[1] Although Plaintiff previously has sought leave to amend his complaint the Court
determined that it would be most efficient to permit Plaintiff leave to amend after the
motion to dismiss was resolved.  Docs. 41, 47, 80, 90.

January 27, 2012 while Plaintiff was at North Florida Reception and Medical Center. Plaintiff was then transferred to Jackson Correctional Institution around February 12, 2012.  Plaintiff was given a medical pass for a low bunk, no pushing/pulling, no lifting over twenty-five pounds, and no prolonged standing for over thirty minutes, which was valid from February 13, 2012, to February 12, 2013.  He was also given a prescription for his high blood pressure.

On February 13, 2013, Plaintiff attempted to get his medical pass renewed, but it was not.  Plaintiff then received a disciplinary report and was placed into administrative confinement.  While in confinement, Plaintiff witnessed a "battery" on Inmate Cameron Dixon by Sergeant Everett, Officer Benton, Officer Graham, and Defendant Captain Jones.  After that Plaintiff was threatened by Officers Benton and Graham and Defendant Jones and was told that if he reported what they did he would be in danger. Plaintiff alleges that Officers Benton and Graham, and Defendant Jones failed to report their abuse of inmate Dixon.

Plaintiff prepared grievances because of the battery he witnessed.  Defendant Jones removed another officer from H-Dorm, and placed Sergeant Everett there so that Plaintiff could be transferred from Y-Dorm to H-Dorm, so that his legal materials confiscated.  Plaintiff alleges that Sergeant Everett confiscated these materials upon Plaintiff's arrival to H-Dorm and did not provide a confiscated items receipt. The legal materials were given to Defendant Jones upon confiscation. Plaintiff alleges he submitted informal grievances about this issue, but these were not logged and processed, and he received a disciplinary report shortly thereafter.

This disciplinary report, #104-130522 contained five errors that somehow

deprived Plaintiff of the ability to marshal facts and prepare a defense.  Plaintiff alleges that he attached exhibits that showed the errors, but the charging staff member removed him or herself when Plaintiff's hearing was conducted, which left Defendants Brown and McGriff to conduct the hearing.  Plaintiff states that because both the charging staff member and Defendant Brown are classification officers, Defendants Brown and McGriff acted in bad faith during the hearing and disregarded Plaintiff's evidence and found him guilty.  They "intentionally failed to ask" Plaintiff if he had any medical conditions which prevented him from working on the disciplinary squad and placed him on the squad for ninety days, and revoked seventy day gain time.

On April 11, 2013, Plaintiff appealed, and raised his five issues.  On May 6, 2013, Defendants Bryant and Cloud "intentionally and acting in bad faith" denied his appeal.  On May 14, 2013, Plaintiff appealed to Defendant Crews.  On June 11, 2013, Defendant Crews approved the appeal and restored Plaintiff's gain time.

On April 12, 2013, Plaintiff showed Sergeant Birch documentation of his spinal injury, which would prevent him from participating on the disciplinary squad.  Sergeant Birch told Plaintiff to show the documentation to the officers in charge of the disciplinary squad, and that person would send him to medical for confirmation.  However, when Plaintiff attempted to show the officer in charge of the squad, Defendant Garner refused to look at the information.  He informed Plaintiff that Plaintiff would do what he said, which was to put on a green vest and stand in line.  Plaintiff did so, and the squad marched behind the kitchen and stood for about ten minutes, and then marched to behind Y-Dorm.  Once there, they were to pick up hoes and hoe the ground.

After about twenty-five minutes of labor, Plaintiff fell to the ground "trembling

uncontrollably."  Defendant Garner then declared a medical emergency because he believed it was a seizure.  Nurse Epps arrived on scene, and Plaintiff was taken to medical in a wheelchair.  A preliminary examination by Nurse Epps revealed positional tremors on the right side, weakness, and sluggishness in the right eye.  Doctor Vilchez had Nurse Epps issue a temporary medical pass for April 12 through April 15, 2013, until Plaintiff could be seen by Dr. Vilchez.  The medical pass included his previous restrictions of low bunk, no pushing/pulling, no lifting over twenty-five pounds, and no prolonged standing for over thirty minutes.

Plaintiff presented his medical pass to Defendant Garner upon his return, who "became irate and intentionally placed [Plaintiff] in a position to aggravate an existing injury," by ordering Plaintiff to march in the sun.  Plaintiff then marched from behind the kitchen, to the front gate, to the center gate, and was then told to stand at attention for ten to fifteen minutes.  Then he was required to march across the compound and around the recreation yard, through five puddles of water, and then march around the yard again, walking through the puddles several times.  Plaintiff states that it takes around seven or eight minutes to walk around the yard.

Plaintiff became dizzy and disoriented and fell face first into the water trembling. Defendant Garner ordered two inmates to pick Plaintiff up and place him in the dry grass.  Defendant Garner then left Plaintiff on the ground while he continued to order the squad around.  Two inmates placed Plaintiff onto a metal stool in the shade, but because he was dizzy he fell down again.  After about two minutes, Plaintiff asked the inmates to declare a medical emergency, and Defendant Jones arrived.  Plaintiff was placed into a wheelchair and he was taken to medical, where Nurse Epps told

Defendant Garner that Plaintiff would not report back to him again that day.  Nurse Epps noted the same symptoms as before, but with the addition of a temperature change between his right arm and his left arm.  Nurse Epps told Dr. Vilchez that staff was not honoring Plaintiff's restricted medical pass, and so Dr. Vilchez issued a medical pass for a bed lay-in from April 12 to April 15, 2013, with instructions to report to medical on April 15, 2013.

On April 13, 2013, Defendant Jones asked Plaintiff to "let that go" with Defendant Garner, and Plaintiff informed him that he could not do so because of his injuries.  Defendant Jones replied that Plaintiff needed to pick his battles.  On the same day, Plaintiff prepared a grievance and placed it into the mailbox, which was witnessed by Defendant Jones.  That grievance disappeared and was not logged, processed, nor was a response filed.

On April 15, 2013, Plaintiff reported to medical and was seen by Defendant Streetman, who issued Plaintiff a low bunk pass, and restricted activity medical pass, both good from April 15, 2013 to April 14, 2014.  Plaintiff was also given ibuprofen for pain, twice daily for a thirty day period.  Plaintiff alleges that despite reason to believe that Defendant Garner had abused Plaintiff, Defendant Jones did not report Defendant Garner as required by Florida law.

Plaintiff alleges that Defendants Jones, Barfield, Cloud, and Bryant entered into a conspiracy to retaliate against Plaintiff.  On April 17, 2013, Plaintiff was ordered to report to the Inmate Classification Team, and Defendant Barfield asked Plaintiff what was the purpose of all of his grievances.  Defendant Holland threatened to put a bullet in the back of Plaintiff's head once he walked out of the prison gates.  Defendants

Cloud and Barfield then ordered Plaintiff to report to the disciplinary squad again the next day.

Plaintiff then deposited an emergency grievance addressed to the Secretary. Later that day, Defendant Jones informed Plaintiff that the inmate classification team had placed him back on the disciplinary squad. Plaintiff was also seen that day by medical. Dr. Alameda-Gomez noted that Plaintiff's blood pressure was very low, and asked Plaintiff whether he was experiencing dizzy spells. When he answered that he was, Plaintiff's medication was adjusted.

On April 18, 2013, Plaintiff reported to the disciplinary squad as ordered. Defendant Garner had been promoted to Sergeant, and Officer McCray was now the officer in charge. Plaintiff deposited an emergency mandamus petition and a motion for a temporary restraining order in the prison mail room to protect himself, "and all inmates at Jackson Correctional Institution." Defendant Garner witnessed Plaintiff in the legal mail line, and reported it to Defendant Jones.

At 1:30 PM that afternoon, Plaintiff became dizzy and fell to the ground. Defendant Garner came over and ordered Plaintiff to get up. Plaintiff could not, and so Defendant Garner deployed chemical agents "just inches from Plaintiff's face" while he lay on the ground. Defendant Jones congratulated Defendant Garner on a job well done. Defendant Jones then stated on video camera that Plaintiff was being combative and disobedient. Plaintiff stated that was a lie. The recording was destroyed.

Plaintiff was then seen by Defendant Dudley in medical, who took his vital signs. While stating his medical complaints, Plaintiff was cut off by Defendant Dudley, who stated "no," and walked away. Plaintiff was then taken to a shower for

decontamination, and then to a confinement cell.  Defendant Jones stated that he did

not care about Plaintiff's jailhouse lawyer skills and Plaintiff better not disrespect him

again or he would gas him.

Shortly thereafter, Plaintiff became dizzy in his cell and fell on the concrete.  He

was taken to medical and evaluated by Defendant Dudley.  Defendant Garner then

issued Plaintiff a false disciplinary report for disobeying an order.

Plaintiff alleges that staff tried to engage in a cover up for their abusive actions.

Plaintiff alleges that Nurse Epps "doctored" a report by omitting any reference of

Defendant Garner's actions.  Plaintiff alleges that Defendant Dudley did not listen to

him and walked away when he was trying to state his ailments after being pepper

sprayed, and the medical report indicated that Plaintiff had no injury.

On April 18, 2013, Defendants Garner, Bryant, Cloud, Barfield, and Jones

informed Plaintiff that his medical restrictions were going to be removed from his

medical pass.  On April 24, 2013, Plaintiff saw Defendant Streetman, who told him that

his medical restrictions seemed to be at the root of all of his problems and removed

them, issuing him a low bunk pass only, good from April 23, 2013, to April 24, 2014.

However, on May 15, 2013, Defendant Streetman recorded in Plaintiff's medical record

that the restricted activity pass had never been rescinded.

On April 22, 2013, Plaintiff reported for sick call because of his pain, and he was

given seven packets of ibuprofen and an analgesic cream.  Plaintiff was told by the

nurse that it was Defendant Cain, the health care administrator, who determined

whether Plaintiff could see a specialist.  Plaintiff alleges that Defendant Cain has a

policy of allowing unqualified people to remove a medical restriction, and to allow

unqualified people to treat medical conditions.  Plaintiff further alleges that Defendant Cain has been suspended by the Department of Corrections.

Plaintiff alleges that Defendant Crews owed Plaintiff a duty of care, which he breached by allowing staff at Jackson CI to abuse Plaintiff.  Plaintiff further alleges that Defendant Crews did not investigate his staff, even after several suspensions put him on notice of staff misconduct.

Plaintiff also alleges that he was denied a channel for filing grievances, because his grievances were not logged or processed.  He alleges that Defendant Brown discarded his grievances before they were given to the grievance coordinator.

Plaintiff further alleges that Defendant Crews should have been on notice that staff were abusing inmates because of the "excessive" amount of chemical agents that was ordered by Jackson CI.  Plaintiff states that inmates were gassed despite having medical conditions such as asthma.  Plaintiff also alleges that Defendant Crews failed to investigate retaliatory actions by Defendant Cloud and other staff members.

Plaintiff alleges that he now suffers from severe pain, uncontrollable tremors on the right side, droopiness of the right side of the face, and vertigo.  Plaintiff alleges that on some date, he was given Ativan for his medical problems, but nothing for his pain.

For relief, Plaintiff requests that the Court declare that Defendants violated his rights, award him compensatory damages, and his costs for this action.  Doc. 1.

Plaintiff's complaint also alleges claims against Angus Kelly, an inmate law clerk at Jackson C.I.  Those claims have previously been dismissed by the Court.  Docs. 31, 95.

## II.  STANDARD OF REVIEW

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 680-84 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief.  In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth."  *Iqbal*, 129 S.Ct. at 1951. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).

Further, "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to

*pro se* complaint).[2]

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal.  *See Bell,* 550 U.S. at 555 (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Iqbal*, 556 U.S. at 680-84 (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.").

## III.  DISCUSSION

### A.    Conspiracy Claims

Plaintiff alleges that Defendants Bryant, Barfield, Cloud, Garner, and Jones, were engaged in a conspiracy to deprive him of his rights.  Doc. 1 at 12, 29, 31. Defendants argue that Plaintiff's conspiracy claims fail because the claims do not sufficiently allege an agreement between Defendants, and because the intracorporate

---

[2]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

conspiracy doctrine defeats a claim of conspiracy.  Doc. 33.

To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that defendants "reached an understanding to violate his rights." *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citations omitted.)  A claim of conspiracy requires "that Plaintiff provide more than a label or a conclusion," and "Plaintiff cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show that an agreement was made." *Oden v. Thomas*, 2013 WL 5502963 (M.D. Ala. 2013) (adopting Magistrate Judge's recommendation that inmate defendants be dismissed because Plaintiff did not sufficiently allege conspiracy with defendant state actors.)

Plaintiff's complaint lacks any facts to reflect that any understanding was made between Defendants. Rather, Plaintiff relies solely on labels and conclusions to support his claim.  There are no facts to suggest that Defendants Bryant, Barfield, Cloud, Garner, and Jones, or any other Defendants, conspired to deprive Plaintiff of his rights. Plaintiff alleges in his response to the motion to dismiss that actions such as Defendant Dudley walking away from him while he was being evaluated are evidence of the conspiracy.  However, this argument fails because Plaintiff has not alleged sufficient facts to demonstrate that there was an agreement made between any of the Defendants. Indeed, Plaintiff does not even allegein his complaint that Defendant Dudley walking away was somehow linked to any of the other Defendants.  Doc. 1 at 18.  Plaintiff's bare assertion of the existence of a conspiracy fails to assert the material facts necessary to establish a conspiracy between Defendants.

Defendants also argue that Plaintiff's conspiracy claims are barred by the

intracorporate conspiracy doctrine. Under the intracorporate conspiracy doctrine a corporation cannot conspire with its employees, and employees working in the scope of their employment cannot conspire among themselves.  *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000.)  In response, Plaintiff argues that Defendants Cain, Streetman, and Dudley, who are health care workers, are not state actors because they are not employed by the D.O.C., and thus the intracorporate conspiracy doctrine does not bar his claim.  Doc. 40.

The Court need not decide whether Defendant Cain, Streetman, and Dudley are state actors in their capacity as medical personnel at Jackson C.I., because Plaintiff has simply not alleged a conspiracy claim against them.  Plaintiff's allegations of a conspiracy in his complaint include the following conclusonal statements: "Defendants Jones, Barfield, Cloud, and Bryant entered into a conspiracy to retaliate against the plaintiff," Doc. 1 at 12, "Defendants Jones, Cloud, Barfield, and Bryant entered into a conspiracy to retaliate against the Plaintiff for filing grievances and legal action," Doc. 1 at 29, and "Declare that Defendants Barfield, Bryant, Cloud, Garner, and Jones, conspired to retaliate against the Plaintiff for exercising his First Amendment to access the courts without fear of retaliation," Doc. 1 at 31.  Plaintiff's sole claim that Defendants Cain, Streetman, and Dudley were involved in a conspiracy is "Declare that Defendant Barfield conspired with medical to remove the Plaintiff's medical restrictions on his medical pass and was deliberately indifferent to the Plaintiff's serious medical condition," Doc. 1 at 31.  This bare allegation, however, without reference to specific Defendants, in Plaintiff's "relief requested" section, is completely insufficient to allege a plausible conspiracy between any of the D.O.C. employees, and Defendants Cain,

Streetman, and Dudley, who may or may not be D.O.C. employees, in the medical unit.

To the extent that Plaintiff's conspiracy claims are limited to those individuals who are D.O.C. employees, even if Plaintiff had alleged sufficient facts to state a plausible claim of conspiracy, his claim would be barred by the intracorporate conspiracy doctrine because all of the Defendants alleged to have engaged in the conspiracy are employees of a single government entity. *Detris v. Cole*, 523 Fed.Appx. 612 (11th Cir. 2013) (unpublished) (holding "the intracorporate conspiracy doctrine prohibits a § 1983 claim against law enforcement officers in their individual capacities . . . as well as claims that do not seek to hold the corporate entity itself responsible," citing *Rehbeg v. Paulk*, 611 F.3d 828 (11th Cir. 2010)); *Dickerson v. Alachua County Commission*, 200 F.3d 761 (11th Cir. 2000). *See also Claudio v. Crews*, 2014 WL 1758106 (May 1, 2014), Case No. 5:13-cv-354-MP-EMT (N.D. Fla.) (adopting Report and Recommendation that Plaintiff's conspiracy claims in another case be dismissed pursuant to the intracorporate conspiracy doctrine.)

Accordingly, because Plaintiff has not alleged sufficient facts to support a claim for conspiracy, and even if he had, his claim would be barred by in the intracorporate conspiracy doctrine, Plaintiff's claims of a conspiracy are due to be dismissed. Plaintiff should be directed to submit an amended complaint which omits his conspiracy claims.

**B.     Due Process Claims**

Plaintiff alleges that disciplinary report  #104-130522 contained five errors that deprived him of the ability to marshal facts and prepare a defense, thus, depriving him of due process.  Defendants argue that Plaintiff's due process claims must fail because he has no protected liberty interest in the overturned disciplinary report, in being

improperly accused of a disciplinary report, or in the grievance process. Defendants are correct.

In *Sandin v. Connor*, 515 U.S. 472, 484 (1995), the Supreme Court recognized only two instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns: (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  When a constitutionally protected liberty interest is implicated, the inmate is entitled to: (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken.  *Wolff v. McDonnell*, 418 U.S. 539 564-66 (1974).  The factfinder's decision need only be supported by "some evidence."  *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56 (1985) (federal courts will not re-weigh the evidence, assess the credibility of the witnesses, or otherwise make a *de novo* review of the proceedings).

In his complaint, Plaintiff admits that after a successful appeal of his disciplinary conviction, Defendant Crews restored all of his lost gain time due to the disciplinary conviction.  Accordingly, Plaintiff cannot state a cognizable claim for the deprivation of due process with respect to the overturned disciplinary report, because it does not implicate a protected liberty interest.

Further, to the extent that Plaintiff also claims that he was denied due process

because his grievances were denied, or he was denied access to the grievances procedure, his claims are also due to be dismissed.  The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  Furthermore, there is no protected interest in the inmate grievance procedures.  *Baker v. Rexroad*, 159 Fed.Appx. 61 (11th Cir. 2005) (holding that "we agree with other circuits that have held that these [inmate grievance] proceedings are not constitutionally mandated.").

Accordingly, Plaintiff's claims that he was denied due process are due to be dismissed.  Plaintiff should be directed to file an amended complaint which omits these due process claims.

## C.    Deliberate Indifference Claims

Plaintiff also alleges that Defendants were deliberately indifferent to his serious medical needs.  Defendants argue that Plaintiff has failed to state a claim for deliberate indifference because his complaint is "replete" with instances of medical care.  Doc. 33.

As an initial matter, it is unclear from Plaintiff's complaint exactly which Defendants he accuses of deliberate indifference.  It appears that Plaintiff alleges that Defendants Garner, Dudley, Jones, Barfield  and Streetman violated his Eighth Amendment rights, and possibly also Defendant Cain.

After careful review of the allegations of the complaint, the Court determines that Plaintiff has alleged three Eighth Amendment deliberate indifference claims that will be permitted to proceed. These are: (1) that Defendant Garner was deliberately indifferent to his medical needs by ignoring the restrictions on his medical pass; (2) Defendants

Barfield and Cloud were deliberately indifferent to his medical needs while they were on the Inmate Classification Team and reassigned Plaintiff to the disciplinary squad, despite being aware of Plaintiff's medical issues; and (3) that Defendant Garner was deliberately indifferent to Plaintiff's serious medical needs after Defendant Garner left Plaintiff on the ground trembling after he collapsed for a second time while on the disciplinary squad.  For the reasons discussed below, any other Eighth Amendment deliberate indifference claims, such as that the care Plaintiff received for his medical problems was insufficient, should be dismissed.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment.  To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.  Along with all other aspects of health care, this remains a question of sound professional judgment.'") ( quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

Plaintiff's factual allegations concerning the medical care that he did receive, and those providers who treated him, simply do not suggest a constitutional violation with respect to that care. Plaintiff's complaint discloses that he was seen by medical a variety of times, including by both Defendants Dudley and Streetman, and was

prescribed treatment, such as ibuprofen and an analgesic cream.  He was seen for evaluation by Defendant Dudley after being pepper sprayed, and he was also given two injections of Ativan.

Plaintiff was seen for medication adjustments to his blood pressure medication, and was repeatedly given a variety of medical restriction passes because of his past spinal fracture, and other medical complaints.  One of those low bunk passes was issued by Defendant Streetman.  These actions do not suggest a constitutional violation, even if Plaintiff disagreed with the treatment that was provided, such as removing restrictions from his medical pass.

With respect to Defendant Cain, there is nothing to suggest that she was involved in Plaintiff's healthcare treatment at all.  Plaintiff's sole allegations against Defendant Cain are that Plaintiff was told by the nurse that it was Defendant Cain, the health care administrator, who determined whether Plaintiff could see a specialist, and that Defendant Cain has a policy of allowing unqualified people to remove a medical restriction, and to allow unqualified people to treat medical conditions, and that she has been suspended by the Department of Corrections.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  To be liable, the claimant must show that the official "personally participate[d]" in the act or there was "causal connection between the actions of [the] supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Because there are no such allegations regarding Defendant Cain in the complaint, Plaintiff's claims against Defendant Cain should be dismissed.

In summary, the following deliberate indifference claims should be permitted to proceed: (1) that Defendant Garner was deliberately indifferent to his medical needs by ignoring the restrictions on his medical pass; (2) Defendants Barfield and Cloud were deliberately indifferent to his medical needs while they were on the Inmate Classification Team and reassigned Plaintiff to the disciplinary squad, despite being aware of Plaintiff's medical issues; and (3) that Defendant Garner was deliberately indifferent to Plaintiff's serious medical needs after Defendant Garner left Plaintiff on the ground trembling after he collapsed for a second time while on the disciplinary squad.  All other deliberate indifference claims, including the claims against Defendants Cain, Streetman, and Dudley, should be dismissed, and Plaintiff should be directed to file an amended complaint which contains only those claims going forward.

**D.      Claims against Defendant Crews**

Plaintiff claims in his complaint that Defendant Crews was negligent, and failed to investigate complaints of staff abuse at Jackson C.I., despite being "on notice." Defendants argue that Plaintiff's claims against Defendant Crews are due to be dismissed because neither negligence nor *respondeat superior* is a theory of recovery under § 1983, and because Defendant Crews is immune in his official capacity.  Doc. 33 at 22, 25.

The undersigned agrees that the claims against Defendant Crews must be dismissed.  First, negligence is not actionable under § 1983, and a plaintiff must allege "a conscious and callous indifference to a prisoner's rights."  *Smith v. Reg'l Dir. of Fla. Dep't Of Corr.*, 368 Fed.Appx. 9, 14 (11th Cir. 2010), quoting *Williams v. Bennett*, 689 F.2d 1370 (11th Cir. 1982).  Because Plaintiff has not alleged that Secretary Crews

acted with such a level of indifference, but only that Defendant Crews was negligent, Plaintiff's claims of negligence are due to be dismissed.

Second, supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  To be liable the claimant must show that the official "personally participate[d]" in the act or there was "causal connection between the actions of [the] supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  The complaint is devoid of such allegations and, accordingly, the individual capacity claims against Defendant Crews are due to be dismissed.

Lastly, Plaintiff is also attempting to sue Defendant Crews in his official capacity as the Secretary of the Department of Corrections.  The law is well settled that a suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes.  *Will v Michigan Dep't. Of State Police*, 491 U.S. 58, 71 (1989).  Therefore, under the Eleventh Amendment when state officials are sued for damages in their official capacity the state officials are immune from suit in federal court.  *Jackson v. Georgia Dep't. Of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Accordingly, Plaintiff's official capacity claims against Defendant Crews are due to be dismissed.

**E.    Plaintiff's Remaining Claims**

As discussed above, the undersigned recommends that the following claims challenged in the motion to dismiss proceed: (1) claims against Defendant Garner for ignoring the restrictions on Plaintiff's medical pass; (2) claims against Defendant Garner for deliberate indifference after Plaintiff collapsed the second time and inmate workers

had to declare a medical emergency; (3) claims against Defendants Barfield and Cloud for re-assigning Plaintiff to the disciplinary squad despite knowledge of his medical condition.

Further, Plaintiff's claims against Defendant Garner for pepper spraying him, and against Defendant Jones for standing by and congratulating Defendant Garner on the pepper spaying, in violation of the Eighth Amendment, which are not challenged in the motion to dismiss, should also be permitted to proceed.

In light of the narrowing of claims and removal of some Defendants, the undersigned recommends that Plaintiff be permitted to file an amended complaint after the ruling on the instant Report and Recommendation, so that Plaintiff may allege facts supporting only those claims going forward.

## IV. RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, Doc. 33, should be **GRANTED IN PART, and DENIED IN PART** as follows:

1.  Plaintiff's claims of conspiracy against all Defendants should be **DISMISSED.**

2.  Plaintiff's claims of violations of due process against all Defendants should be **DISMISSED**.

3.  Plaintiff's claims of deliberate indifference to his serious medical needs should be **DISMISSED,** except for those claims against Defendants Garner, Barfield, and Cloud.

4.  Plaintiff's official and individual capacity claims against Defendant Crews should be **DISMISSED**.

5.  Plaintiff should be directed to file an amended complaint with only those claims that have not been dismissed.

6.  The case should be remanded back to the undersigned for the consideration

of Plaintiff's amended complaint.

**IN CHAMBERS**, at Gainesville, Florida, this 20th day of October 2014.

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.